IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 06–cv–01660–EWN–MEH

SLAWOMIR GOLABEK,

    Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

    Defendant.

## ORDER AND MEMORANDUM OF DECISION

This is a contract dispute. Plaintiff Slawomir Golabeck asserts that Defendant Home Depot U.S.A., Inc. breached a contract it made with him for the special order sale of copper wire. This matter comes before the court on "Defendant's Motion for Summary Judgment and Brief in Support Thereof," filed November 29, 2006 and "Plaintiff's Cross Motion for Summary Judgment," filed January 23, 2007. Jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C.A. § 1332 (West 2007).

### FACTS

*1.    Factual Background*

On May 5, 2006, Plaintiff visited Defendant's store number 1520, located in Denver, Colorado. (Def.'s Mot. for Summ. J. and Br. in Support Thereof, Statement of Undisputed

Material Facts ¶ 1 [filed Nov. 29, 2006] [hereinafter "Def.'s Br."]; *admitted at* Resp. in Opp'n to Def.'s Mot. for Summ. J. and Cross Mot. for Summ. J., Resp. to Statement of Undisputed Material Facts ¶ 1 [filed Jan. 11, 2007] [hereinafter "Pl.'s Resp."].) On that date, Plaintiff ordered five pallets of copper wire at a price of $2,130 per pallet.[1] (*Id.*) Additionally, Plaintiff ordered twenty individual 250-foot rolls of copper wire at a price of $92 per roll. (*Id.*) Plaintiff tendered payment in the amount of $13,439.24 for the May 5, 2006 order and Defendant delivered the five pallets and twenty rolls of wire. (*Id.*, Statement of Undisputed Material Facts ¶¶ 2–3; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 2–3.)

On May 6, 2006, Plaintiff returned to Defendant's store number 1520. (*Id.*, Statement of Undisputed Material Facts ¶ 4; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 4.) On that date, Plaintiff executed a "[s]pecial [s]ervices/[h]ome [i]mprovement [a]greement" (the "Agreement") to purchase thirty additional pallets of copper wire at a price of $2,130 per pallet. (*Id.*, Statement of Undisputed Material Facts ¶ 5; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5.) Further, attached to the Agreement was a special services customer invoice (the "Invoice"), which stated that Defendant "reserve[d] the right to limit the quantities of merchandise sold to customers" (the "Limiting Clause"). (*Id.*, Statement of Undisputed Material Facts ¶¶ 5–6; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 5–6; *see also* Pl.'s Resp., Ex. 1 at 1 [Agreement and Invoice].) Moreover, the Invoice stated that it was "only a QUOTE for [] merchandise" that "becomes an

---

[1] Each pallet contained sixty 250-foot rolls of wire. (Def.'s Br., Statement of Undisputed Material Facts ¶ 1; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 1.)

Agreement upon payment and an endorsement by a [] register validation [from Defendant]." (Pl.'s Resp., Ex. 1 at 1 [Agreement and Invoice] [emphasis in original].)  Defendant endorsed the Agreement with a register validation.  (*Id.*)  Plaintiff tendered to Defendant $65,753.10 as payment for the wire.  (*Id.*, Additional Disputed Facts ¶ 7; *deemed admitted at* Def.'s Reply in Supp. of Mot. for Summ. J., Resp. Concerning Disputed Facts ¶ 7 [filed Feb. 9, 2007] [hereinafter "Def.'s Reply"].)[2]  Defendant never delivered the thirty pallets of wire to Plaintiff. (Def.'s Br., Statement of Undisputed Material Facts ¶ 7; *admitted at* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 7.)

Evidently, Plaintiff attempted to make his purchases during a copper wire shortage. (Def.'s Reply, Ex. A–1 ¶ 3 [King Aff.].)  According to one of Defendant's managers, Defendant could not locate wire to fill Plaintiff's order at the stated price of $35.50 per roll ($2,130 per pallet), because prices ranged from $58.76 to $79.90 per roll.  (*Id.*, Ex. A–1 ¶ 5 [King Aff.].)  By May 12, 2006, wire pricing had risen to between $69.12 and $102 per roll.  (*Id.*, Ex. A–1 ¶ 9 [King Aff.].)  On May 12, 2006, Defendant's manager offered to sell the wire to Plaintiff for $69.12 per roll until May 14, 2006 or, in the alternative, to refund Plaintiff's payment in full.  (*Id.*)

---

[2]Defendant's only point of contention with Plaintiff's allegation is that it "believes" Plaintiff only paid part of the $65,753.10 by credit card "and the remainder was paid by a friend or associate."  (Def.'s Reply, Resp. Concerning Disputed Facts ¶ 7.)  Ignoring this court's practice standards, Defendant makes no citation to the record to support its position.  This court requires that a party opposing a motion for summary judgment "admit or deny the asserted material facts set forth by the movant. . . .  Any denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial." (Practice Standards – Civil, Special Instructions Concerning Motions for Summary Judgment ¶ 4.) Based on the Invoice and Agreement provided, the court deems Plaintiff's allegation admitted.

On June 6, 2006, Defendant re-credited Plaintiff's $53,753.10 and, after attempting to refund to Plaintiff the remaining $10,000 paid in cash, deposited said amount into the registry of this court. (*Id.*, Ex. A–1 ¶ 10 [King Aff.].)

### *2.      Procedural History*

On August 1, 2006, Plaintiff filed a complaint alleging a claim for breach of contract based on non-delivery of the thirty pallets in the District Court for the City and County of Denver, Colorado. (Notice of Removal, Ex. 1 at 6 [Compl.] [filed Aug. 22, 2006].) On August 22, 2006, Defendant removed the case to this court. (*Id.*) On November 29, 2006, Defendant moved for summary judgment, arguing that the Limiting Clause language in the Invoice justified its non-delivery because no sale occurred. (Def.'s Br.) On January 11, 2007, Plaintiff responded to Defendant's motion. (Pl.'s Resp.) Plaintiff argues that Defendant's interpretation of the Limiting Clause is unreasonable and unconscionable and would render the Invoice and Agreement illusory. (*Id*.) On February 9, 2007, Defendant filed a reply in support of its brief. (Def.'s Reply.)

On January 23, 2007, Plaintiff filed a cross-motion for summary judgment comprising two pages of briefing. (Pl.'s Cross Mot. for Summ. J. [filed Jan. 23, 2007] [hereinafter "Pl.'s Br."].) Plaintiff attaches his response brief to Defendant's motion for summary judgment, which he incorporates into his own motion, and argues he is entitled to summary judgment, "as established" in the brief. (*Id.*) On February 12, 2007, Defendant responded to Plaintiff's cross-motion. (Def.'s Resp. in Opp'n to "Pl.'s Cross-Mot. for Summ. J." [filed Feb. 12, 2007].) On February 21, 2007, Plaintiff filed a reply in support of his motion. (Pl.'s Reply in Supp. of Cross Mot. for Summ. J. [filed Feb. 21, 2007] [hereinafter "Pl.'s Reply"].)

**ANALYSIS**

*1.    Standard of Review*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2007). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed

in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

### *2. Evaluation of Claims*

Defendant argues it is entitled to summary judgment because: (1) the Limiting Clause contained in the Invoice states that Defendant can limit the quantities of merchandise it sells; and (2) no sale took place in this case because it never delivered the wire and, therefore, title never passed. (Def.'s Br. at 2–4.) On the other hand, Plaintiff asserts he is entitled to summary judgment because Defendant's interpretation of the Limiting Clause is "*per se* unreasonable" and unenforceable. (Pl.'s Resp. at 5.) Alternatively, Plaintiff argues that if Defendant's interpretation is correct, the court should sever the Limiting Clause from the Agreement and Invoice. (*Id.* at 8.)

Although the parties never deign to mention it expressly, in Colorado, a successful breach of contract claim requires: (1) existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform by the defendant; and (4) damages. *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The parties' arguments speak to the third element. Defendant evidently argues that the court should interpret the Limiting Clause as allowing Defendant to act exactly as it did. (Def.'s Br. at 2–4.) In keeping with such interpretation, Defendant implicitly asserts that it did not fail to perform. (*Id.*) Plaintiff apparently implores the court: (1) to interpret the Limiting Clause as only applicable until Defendant accepted payment and validated the Agreement and Invoice; or (2) to omit the Limiting Clause from the Agreement and Invoice altogether. (Pl.'s Resp. at 5–8.) Under either scenario Plaintiff proposes, Defendant failed to perform its duty to deliver the wire. (*Id.*)

Contract interpretation is "a question of law to be resolved by the court." *Denver Ctr. for the Performing Arts v. Briggs*, 696 P.2d 299, 306 (Colo. 1985); *see also Grant v. Pharmacia & Upjohn Co.*, 314 F.3d 488, 491 (10th Cir. 2002). "The primary goal of contract interpretation is to determine and give effect to the intention of the parties." *USI Props. East, Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997). The intent of the parties to a contract must be determined primarily from interpreting the language of the instrument itself. *Id*. In construing a contract, the court "should not rewrite the provisions of an unambiguous document, but must enforce an unambiguous contract in accordance with the plain and ordinary meaning of its terms." *Id.* "Whether . . . a contract is ambiguous is also a question of law for the court." *Denver Ctr. for the Performing Arts*, 626 P.2d at 306. "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed . . . and [t]he plain effect of a contract should not be destroyed by strained construction." *Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1232 (10th Cir. 1999). The mere fact "'that the parties disagree as to the meaning of the terms of the contract does not lead necessarily to the conclusion that the contract is ambiguous.'" *Id.* (quoting *Denver Ctr. for the Performing Arts*, 626 P.2d at 306). For the reasons set forth below, the court finds that the Limiting Clause is not ambiguous, illusory, or unconscionable and enters summary judgment for Defendant.

### a.     *Interpretation of the Limiting Clause*

The court finds that the generally accepted meaning of the words "[w]e reserve the right to limit the quantities of merchandise sold to customers" sufficiently and unambiguously conveys

that Defendant could limit its sale of copper wire rolls and pallets to Plaintiff, just as Defendant argues. (*See* Def.'s Br. at 1; Pl.'s Resp., Ex. 1 at 1 [Agreement and Invoice].) Although this interpretation of the Limiting Clause is satisfactory given the language on its face, the court notes that the definition of "sale" under the Colorado Uniform Commercial Code ("UCC") buttresses this position. The UCC provides that: (1) a "sale" consists in the passing of title from the seller to the buyer for a price; and (2) "[u]nless otherwise explicitly agreed," title passes to the buyer at the time and place at which the seller physically delivers the goods to be sold. Colo. Rev. Stat. §§ 4–2–106, 4–2–401 (2006). In this case, Plaintiff points to no explicit agreement reflecting that title to the wire would pass upon any condition other than delivery of same. (*See* Pl.'s Resp.; Pl.'s Br.; Pl.'s Reply.) Accordingly, there was no "sale" of the wire until Defendant delivered the wire in question. It necessarily follows that Defendant's express reservation of its right to limit the quantity of wire it sold to Plaintiff means that under the Limiting Clause, Defendant could limit the quantity of wire it delivered to Plaintiff, and could do so until the moment of delivery.

Plaintiff takes great issue with this logic and argues that the "only reasonable interpretation" of the Limiting Clause is that Defendant reserved its right to limit quantities sold until it contracted and was legally bound to deliver the total quantity of merchandise set forth on the contract. (Pl.'s Br. at 5.) Plaintiff posits that such a legally binding contract would spring into existence upon Defendant's: "(1) accepting payment; (2) printing on its [Invoice] a register validation; and (3) signing the [Agreement]." (*Id.*) Plaintiff's is precisely the sort of strained interpretation this court is obligated to avoid. *See Bennett*, 189 F.3d at 1232. Defendant was savvy enough to state expressly that: (1) the Invoice is "only a QUOTE for the merchandise and

-8-

services" contemplated therein; and (2) the Invoice becomes part of the Agreement "upon payment and an endorsement by a [Defendant] register validation." (Pl.'s Resp., Ex. 1 at 1 [Agreement and Invoice] [emphasis in original].) Had Defendant intended to reserve its rights to limit quantities sold only to until the point of register validation and receipt of payment, it is markedly difficult to ascertain why Defendant would not have included the Limiting Clause in the same paragraph describing the Invoice as a "QUOTE." (*See id.*) Plaintiff makes no attempt to solve this mystery. (*See* Pl.'s Br.; Pl.'s Reply; Pl.'s Resp.) The court finds that the Limiting Clause reserves Defendant's right to limit the quantity of goods it sold until delivery of said goods.

This court's interpretation is further bolstered by the Court of Special Appeals of Maryland's persuasive decision on a similar issue in the unreported *Maurice Electrical Supply Co., Inc. v. Home Depot U.S.A., Inc.*, No. 2175, slip op. (Md. Ct. Spec. App. Oct. 4, 2006), *cert. denied* 918 A.2d 469 (2007). In that case, the seller: (1) executed a contract providing that the seller "reserve[d] the right to limit the quantities of merchandise sold to customers" — verbatim language to that contained in the Limiting Clause at issue here; and (2) accepted payment of $279,263.25 for 30,000 pieces of conduit tubing, which was in short supply. *Id.* at 2. The seller delivered $28,536.03 worth of tubing, but subsequently "exercised its option to limit the quantity . . . sold" and refunded the $250,727.22 balance to the purchaser. *Id.* at 4. The *Maurice* court interpreted the contract language to mean the seller "was free to limit the quantity [of tubing] that it would deliver to [a] purchaser, even after it had charged the purchaser's credit card for the entire sum [of purchase of a larger amount]." *Id.* at 2, 6. The court reasoned that because

title did not pass to the purchaser until delivery of the goods, the right "to limit the amount of goods [to be] deliver[ed] was reserved" and "[t]here was no breach" when the seller exercised its right. *Id.* at 6.

Plaintiff attempts to distinguish *Maurice* on three points. First, Plaintiff notes that the purchaser in *Maurice* was a competing merchant who had "attempted to hoodwink [the seller] into violating its policy of not selling large quantities [of goods] to competitors." (Pl.'s Resp. at 7.) Second, Plaintiff notes that it is unclear whether the seller had validated an invoice or executed an agreement in *Maurice*. (*Id.*) Third, Plaintiff asserts that in *Maurice* "it does not appear from the opinion that [the seller] brought to the court [sic] attention the impact of adopting [the seller's] position — i.e. [sic] an illusory contract." (*Id.*) This court finds no significance in any of these purported distinctions. As to Plaintiff's first two points, the *Maurice* court did not address any purported fraud, misrepresentation, or lacking meeting of the minds, but based its decision entirely on its own interpretation of the clause reserving the seller's right to limit sales and the definition of a "sale" under the UCC as the transfer of title. *Maurice*, No. 2175, at 2–8. Concerning Plaintiff's third point, as will be discussed in further detail, the court finds the Agreement and Invoice in this case were not illusory. (*See Analysis* § 2b, *infra*.)

### b. *Enforcement of the Limiting Clause*

Plaintiff argues that the Limiting Clause renders the Agreement and Invoice illusory and is otherwise unreasonable and unconscionable. (Pl.'s Resp. at 5–8.) The court attempts to impose a sequential order on Plaintiff's desultory, repetitive, and unavailing arguments. First, Plaintiff asserts that Defendant's — and this court's — interpretation of the Limiting Clause is "*per se*

-10-

unreasonable." (*Id.* at 5.) Ostensibly in support of this argument, Plaintiff points the court to *Kussy v. Home Depot U.S.A., Inc.*, No. 06–12899, 2006 WL 3447146 (E.D. Mich. Nov. 28, 2006) and posits that Defendant has taken the position before "that it can unilaterally refuse to perform contracts with its customers." (*Id.* at 5 n.2.) Trying to determine how *Kussy* applies to the instant case or supports Plaintiff's arguments is rather like trying to extricate a sword from a stone, where Plaintiff is King Arthur.

A brief description of the case best illuminates this court's perplexity. The plaintiff in *Kussy* attempted to purchase electrical wire marked with a certain price. 2006 WL 3447146, at *1. When the plaintiff approached the cash register to make his purchase, the seller refused to honor the price. *Id.* The plaintiff purchased the wire at a higher price demanded by the seller and promptly filed a class action suit charging unjust enrichment, fraud, violation of the Michigan Consumer Protection Act, and breach of contract. *Id.* The court denied a motion to dismiss the plaintiff's claim for breach of contract, but made no findings as to the merits or substance of the case. *Id.* at *5. What Plaintiff intended to accomplish with this citation remains a mystery, for *Kussy* lends no support whatsoever either to Plaintiff's motion for summary judgment or to his arguments against Defendant's motion.

Plaintiff's second argument is that enforcing the Agreement and Invoice with the Limiting Clause intact would "relieve [Defendant] of any obligations whatsoever to [Plaintiff] rendering the [A]greement illusory." (Pl.'s Resp. at 5.) The court disagrees. Plaintiff's statement of the law is correct: "[a]n illusory contract is an agreement in which one party gives consideration that is so insignificant that an actual obligation cannot be imposed." *Commonwealth Edison Co. v. United*

*States*, 56 Fed. Cl. 652, 664 (Ct. Cl. 2003); *see also Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (citing treatise to underscore the notion that to create a binding contract, the contractual promise must be an "undertaking or commitment to do or refrain from doing something in the future"). Plaintiff evidently alleges that the Limiting Clause leaves Defendant's future actions to its own future will, thereby assigning little meaning to its promise to deliver goods contained in the Agreement and Invoice. (Pl.'s Resp. at 5.) Problematically, in making these allegations, Plaintiff ignores the express reservation of his own rights.

The Agreement provides that a purchaser, here Plaintiff, "**MAY CANCEL THIS AGREEMENT WITHOUT PENALTY OR OBLIGATION BY DELIVERING WRITTEN NOTICE TO [DEFENDANT] BY MIDNIGHT OF THE THIRD BUSINESS DAY AFTER SIGNING**" and thereafter "may terminate this Agreement at any time after providing [Defendant] with ten [] or more business days' notice." (*Id.*, Ex. 1 at 4 [Agreement and Invoice].) Thus, by the plain language of the Agreement and Invoice, neither party has guaranteed its performance. Plaintiff has bargained to purchase goods from Defendant or renege on the deal, while Defendant has bargained to sell goods to Plaintiff or renege on the deal. In the event either party reneges, Plaintiff retains his monies and Defendant retains its goods. In short, both parties receive the benefit of the ability to undo the deal and suffer the detriment that the deal may be undone. These mutual benefits and detriments serve as adequate consideration on either side of the contract. Accordingly, this court finds that the Agreement and Invoice are not illusory. *Cf. Gourley v. Yellow Transp., LLC*, 178 F. Supp. 2d 1196, 1203 (D. Colo. 2001) (finding contract that bound one party without binding the other to be illusory).

Finally, Plaintiff argues that because the Limiting Clause provided that he was bound to pay for the wire, but Defendant "might or might not, at its whim, actually deliver the wire," the Limiting Clause is an "escape hatch that is so blatantly one-sided as to be substantively unconscionable on its face." (Pl.'s Br. at 7.) A contract is not unconscionable simply because it places one party in an advantageous position, or because the obligations fall more onerously on another party. *City P'ship Co. v. IR-TCI Partners V, L.P.*, 252 F. Supp. 2d 1114, 1122 (D. Colo. 2003). To support a finding of unconscionability, "there must be evidence of some overreaching on the part of one of the parties such as that which results from inequality of bargaining power or under other circumstances in which there is an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to that party." *Mullan v. Quickie Aircraft Corp.*, 797 F.2d 845, 850 (10th Cir. 1986); *see also City P'ship Co.*, 252 F. Supp. 2d at 1122 ("[U]nconscionability generally requires a demonstration of an absence of meaningful choice by one party together with contract terms which are unreasonably favorable to the other party."). Plaintiff asserts: (1) Defendant had greater bargaining power; (2) the plain language of the Limitation Clause did not give adequate notice of Defendant's intention not to deliver the wire; and (3) Plaintiff did not knowingly assent to the possibility that Defendant would not deliver the wire. (*Id.* at 7–8.) None of Plaintiff's arguments is convincing. As this court has already emphasized, the terms of and benefits under the Agreement and Invoice are not one-sided. Both Plaintiff and Defendant retained the option to undo the sale of wire in this case at any point after payment, validation of the Invoice, and execution of the Agreement. (*Id.*, Ex. 1 at 2–4 [Agreement and Invoice].) *See City P'ship Co.*, 252 F. Supp. 2d at 1122 (citing Seventh Circuit

decision to underscore that parties can contract for preposterous terms and a party may be held to its bargain if contract terms are unambiguous). In the absence of any gross disparity favoring either party, this court simply cannot find that the Limiting Clause or any other portion of the Agreement or Invoice is unconscionable or unenforceable.

### *3. Conclusion*

Based on the foregoing, it is therefore ORDERED that

1. Defendant's motion for summary judgment (#21) is GRANTED.

2. Plaintiff's motion for summary judgment (#34) is DENIED. The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims with prejudice. Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 11th day of July, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge